UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **OBERLIN RENTALS, LLC** | : | DOCKET NO. 07-722-JVP-DLD |
| VS. | : | JUDGE: PARKER |
| **MARKEL INTERNATIONAL INSURANCE COMPANY LIMITED** | : | MAGISTRATE: DALBY |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Plaintiff, **OBERLIN RENTALS, LLC** individually, and on behalf of all others similarly situated ("Plaintiff" or "Plaintiffs"), by and through undersigned attorneys, pursuant to Fed. R. Civ. P. 23, submits this Memorandum of Law in Support of Motion For Class Certification, and in support thereof, states as follows:

## I. INTRODUCTION

In this action, Plaintiffs seek relief on behalf of Louisiana policyholders whose property insurance claims were underpaid by Defendant Markel International Insurance Company, Limited ("Markel" or "Defendant"), due to, *inter alia*, Markel's systematic underpayment of covered losses under its policies.

As alleged in Plaintiffs' Class Action Complaint (the "Complaint"), Markel breached its contracts with Plaintiff and the other Class members by computing losses and resulting offers of settlement through the estimating software used by its adjusters which failed to properly pay amounts for "General Contractor Overhead and Profit"[1] to its insureds and by improperly withholding sales tax on the materials that Markel estimated would be used to complete repairs.[2]

---

[1] "General Contractor Overhead and Profit" is sometimes referred to as "GCOP."
[2] The Complaint is cited herein by paragraph number, "Complaint ¶ __."

As demonstrated below, this action meets all the requirements of Fed. R. Civ. P. 23, and the Class should be certified. Plaintiff and plaintiffs' counsel are adequate representatives for the proposed Class, as Plaintiff has demonstrated his commitment to this case and to the interests of the Class, and plaintiffs' counsel are experienced class action litigators.

Plaintiff's claims are also typical of those of the Class, as plaintiffs and all members of the Class have had their insurance contracts breached through Defendant's common course of conduct: (1) the use of Markel's loss-estimating software; (2) Markel's policy of systemically excluding general contractor's overhead and profit from it loss estimates and resulting offers of settlement when, as established by the estimates created of Markel Adjusters, general contractors overhead and profit should have been paid; (3) Markel's policy of systemically withholding from Markel estimates of damages sales tax that must be charged on materials that Markel estimated would be used to complete repairs;  (3) Markel's policy of not disclosing to its insureds that they were knowingly underpaid.

Furthermore, common questions of fact and law exist in this matter, and these common questions predominate over any individual question.  These elements are met in class actions for contract claims when those claims arise from form contracts (such as insurance policies in this case) and arises from a uniform common course of conduct on the part of defendants. Management of this litigation through class treatment is far superior to any alternative technique of managing complex litigation.  This is particularly true here, where the facts and law related to every single class members' claim are identical.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

As alleged in the Complaint,[3] which must be taken as true for purposes of this motion, Defendant is considered by Louisiana Law to be a foreign insurance corporation which sells property insurance for residential buildings located in the State of Louisiana as a "surplus lines" carrier. Complaint, ¶ 3. Plaintiff is a Limited Liability Company, organized under the laws of the State of Louisiana and has a single member, Kermith Sonnier. Complaint, ¶ 4. Plaintiff also owns residential property located in Louisiana, including the properties located at 2712 Louisiana Avenue and 2700 Common Street, Lake Charles, Louisiana and which suffered physical damage and loss as a consequence of the hurricane.[4] Complaint, ¶ 9-14.

The plaintiff subsequently submitted its claims for damages to the Defendant and the defendant dispatched adjusters who prepared estimates of the Plaintiff's' respective damages. Based upon these estimates, Markel tendered "settlements" to the plaintiffs, which were actually payments under the Plaintiffs respective policies in advance of the repair or replacement of the Plaintiffs' damaged property. However, Plaintiff was not paid anything for general contractor overhead and profit or for sales tax which, as a matter of law, must be charged on materials that Markel estimates established was part of Plaintiff's damages. Complaint, ¶ 14.

---

[3] The "Complaint" refers to the Plaintiff's Petition For Insurance Benefits and Damages and Class Action Complaint originally filed in the 19th Judicial District Court for and in the Parish of East Baton Rouge, Louisiana and as removed to this Honorable Court. (doc. 1, Ex. "A."), unless the text of this memorandum indicates otherwise.

[4] Hurricanes Katrina and Rita will sometimes be referred to collectively as the "Hurricanes."

### III. FAILURE TO APPROPRIATELY PAY GENERAL CONTRACTORS OVERHEAD AND PROFIT

As will be shown at the trial on the merits, established standards for the "reconstruction" or repair industry dictate that upon a determination that three or more building trades are implicated in the repair of property, then a general contractor is presumed to be needed to coordinate, supervise and oversee the repair. General Contractors generally charge 10 percent of the repair contract price for overhead and 10 percent for the General Contractor's profit. This is referred to as General Contractor Overhead and Profit, or GCOP.

Markel adjusters did not include an amount for GCOP when an Insured's estimate implicated the involvement of three or more building trades and thus, a large number of Markel insureds are owned an amount for GCOP. This was Markel's first error.

An insurance estimate, much like a general contractor's bid, includes an amount for, inter alia, labor and materials. Most estimating software programs, such as the estimating software program used by Markel adjusters, establish "component prices" that include the costs of materials and labor and require that an amount for sales taxes to be charged on the materials be added to the estimate to correctly and completely estimate the amount of damages suffered by an Insured and thus the amount of that an insurance carrier, such as Defendant, owes to its Insureds.

Markel adjusters, in developing their damage repair estimates, did not include an amount for sales tax to be charged on materials. This was Markel's second error.

In adjusting its claims Markel thus created two distinct sub-classes of insureds:

1. Sub-Class #1 is composed of those insureds whose Markel estimate implicated the need for three or more building trades but who were paid nothing for GCOP on their insurance building damage repair costs.
2. Sub-Class #2 is composed of those insureds that did not receive an amount for sales taxes to be charged on materials that the Markel estimates establish are part of the Insureds' losses.

## IV. SUB-CLASS # 1: NO PAYMENT OF GCO&P

Plaintiffs will present expert testimony at the Class certification hearing that establishes that when three (3) or more building trade categories are involved in an insurance building damage repair estimate, General Contractor Overhead & Profit is to be included in the amounts to be paid to its insureds. If this expert opinion is adopted at the trial on the merits, it impacts "Sub-Class #1 Insureds". Implementing the adoption of this opinion involves a simple forensic analysis of existing information already in the possession of Markel and contained in each building damage repair estimate already in each Markel claim file. This analysis will likely be electronic and the calculation of the dollar shortfall suffered by each insured in the sub-class will certainly be mathematical.

It is commonly referred to as the "3 or more trades" rule in the overhead and profit calculation and is the standard operating procedure in calculating the total construction price of a project, whether the construction project is residential or commercial, and whether the project is repair construction or remodel construction or new construction.

The building damage repair estimate prepared by Markel for Oberlin Rental's losses is an example of "Sub-Class #1" insureds in that:

1. In each claim Markel included and electronically calculated the scope of damage and building repair estimate specified by trade category, which shows that "3 or more trades" are implicated in the repair of Oberlin Rental's property.
2. However Markel did not include or electronically calculate the additional "General Contractor Overhead & Profit" Allowance as set forth above.

Identifying members of Sub-Class #1 and calculating the dollar shortfall suffered by each of the "Sub-Class #1 Insureds" requires no additional site visits and no additional inquiries of the insured.

Because the final insurance building damage repair estimate of each claim file was determined using a computerized estimating program, it is believed that the electronic version of each building damage repair estimate is electronically stored by Markel. For each claim, the program can generate an "Estimate Recap by Trade" report for each building damage repair estimate. If the report lists "3 or more trade categories" for a particular loss and no GCOP was paid, then the computer can be make to force the entry to add "General" Contractor Overhead & Profit."

### V. SUB-CLASS # 2: FAILURE TO PAY SALES TAXES

As was set forth in Section III, plaintiff will present expert testimony at the Class certification hearing that establishes that Markel insurance policies, including the policy that insured the Oberlin Rentals property in question, provide that Markel will pay the "actual cash value," or "ACV" of damaged or destroyed property. Those policies also contemplates that Markel ACV will computed as the cost to repair or replace damaged or destroyed property, less applicable depreciation. As will be shown at the trial on the merits, the cost to repair or replace damaged or destroyed property in Louisiana, by law, includes sales taxes chargeable on materials to be used to repair or replace damaged or destroyed property.

However, when Markel made pre-repair payments to the Plaintiff, it withheld taxes payable on the costs of materials found on Markel's estimates. Thus, Markel's estimates systematically underpaid its insureds and were self serving and in violation of the terms of its own policy and constitute a breach of that policy of insurance and an unfair trade practice.

The named Plaintiff's claim is representative of this sub-class.

6

## VI.     PENALTIES

Louisiana Revised Statute 22:658(A)(1) provided at all pertinent times and in pertinent part that all insurers issuing any type of contract, other than those specified in R.S. 22:656, R.S. 22:657, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, "shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest."

Louisiana Revised Statute 22:658(B)(1) provided at all pertinent times and in pertinent part that should an insurance company fail to make such payment within thirty days after receipt of such satisfactory written proofs and demand as is required by LSA-R.S. 22:658(A)(1) when such failure is found to be arbitrary, capricious, or without probable cause, "shall subject the insurer to a penalty, in addition to the amount of the loss, of twenty-five percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater."

At all pertinent times and in pertinent part Louisiana Revised Statute 22:1220(A) placed upon any insurer that sells or delivers a policy of property damage insurance, including a policy of "Fire Insurance" in the State of Louisiana the duty of good faith and fair dealing with its insured and further establishes that the insurer has an "affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both."

Any insurer who breaches the duties mandated by LSA-R.S. 22:1220 "shall be liable for any damages sustained as a result of the breach." Louisiana Revised Statute 22:1220(B)(1) provides in pertinent part that "[m]isrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue" constitutes a breach of the insurer's duties imposed in LSA-

7

R.S. 22:1220(A) if knowingly committed or performed by an insurer.

Louisiana Revised Statute 22:1220(B)(5) provided at all pertinent times and in pertinent part that "[f]ailing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause" constitutes a breach of the insurer's duties imposed in LSA-R.S. 22:1220(A).

Louisiana Revised Statute 22:1220(C) provided at all pertinent times and in pertinent part that should an insurer violate the duties placed upon it by, *inter alia*, Louisiana Revised Statute 22:1220 that in addition to any general or special damages to which a claimant is entitled for breach of the imposed duty of good faith and fair dealing, the claimant may be awarded penalties "in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater."

For the reasons more fully set forth above, the actions of Markel constitute a breach of the duties owed to the Plaintiffs and all of those similarly situated and entitle the Plaintiffs and those similarly situated to penalties pursuant to Louisiana Revised Statute 22:658 and/or 22:1220. Thus, Markel owes to the members of subclasses 1 and 2 above statutory penalties damages pursuant to Louisiana Revised Statute 22:658 and/or 22:1220.

### VII. CLASS CERTIFICATION LAW AND PROCEDURE

Class certification under Rule 23 requires that the named plaintiff satisfy the four requirements of Rule 23(a), and at least one of the requirements set forth in Rule 23(b). However, the merits of Plaintiff's claims are not to be evaluated when determining whether the requirements of Rule 23 have been satisfied. ***Kirkpatrick v. J.C. Bradford & Co.***, 827 F.2d 718, 721 (11th Cir. 1987).

## VIII.   PLAINTIFFS SATISFY RULE 23(a)

The Plaintiff requests the certification of the following Class and Sub-Classes:

(A)   **"Subclass 1"**   The Plaintiff requests the certification of the following Subclass which is, by definition, found within the Class (Referred to a "Subclass 1"):

> All Louisiana property owners insured by Markel and:
>
> 1. Who suffered a covered loss to their insured property on or after August 29, 2005;
>
> 2. For which damages Markel and/or its agents or contractors created a damages assessment or estimate of costs to repair or replace said damaged property;
>
> 3. Whose Markel estimate indicated the involvement of three or more building trades;
>
> 4. Whose Markel Estimate did not include an amount for General Contractor's Overhead and Profit; and
>
> 5. Who were not paid an amount for General Contractor's Overhead and Profit.

(B)   **"Subclass 2"**   The Plaintiff requests the certification of the following Subclass which is, by definition, found within the Class (Referred to a "Subclass 2"):

> All Louisiana property owners insured by Markel and:
>
> 1. Who suffered a covered loss to their insured property on or after August 29, 2005;
>
> 2. For which damages Markel and/or its agents or contractors created a damages assessment or estimate of costs to repair or replace said damaged property using IntegriClaim estimating software and whose losses were adjusted on an actual cash value (ACV) or replacement cost value (RCV) basis;
>
> 3. Whose Markel Estimates included an amount for materials;
>
> 4. Whose Markel Estimates did not calculate and include an amount for sales taxes computed on the costs of materials;
>
> 5. Who were not paid an amount for sales tax.

The Class, including all subclasses, specifically excludes the following persons or entities: (i) MARKEL and all directors, officers, employees, principals, shareholders and agents of MARKEL; (ii) any and all Federal, State, Parish, and/or Local Governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, councils and/or any other subdivision, and any claim that such governmental entities may have directly or indirectly; (iii) any currently-sitting Louisiana state court Judge or Justice, or federal court Judge currently sitting in Louisiana, and the current spouse and all other persons within the third degree of consanguinity to such judge/justice; (iv) any lawfirm of record in these proceedings, including all attorneys in said lawfirms.

### A.   **NUMEROSITY**

Numerosity requires that a class be so numerous that joinder of all class members would be impracticable. It is not necessary that the precise number of class members be known. ***Fuller v. Becker & Poliakoff,*** 197 F.R.D. 697 (M.D.Fla. 2000) (citing ***Barlow v. Marion County Hospital District***, 88 F.R.D. 619, 625 (M.D. Fla. 1980). As such, courts have routinely certified classes numbering with as low as 25 to 40 persons. *See*, *e.g.,* ***Kilgo v. Bowman Transp., Inc.***, 789 F.2d 859, 878 (11th Cir. 1986) (certifying a 31 person class); ***Kreuzfeld, A.G. v. Camehammer,*** 138 F.R.D. 594, 599 (S.D. Fla. 1991) (explaining that a class with as few as 25 or 30 class members can satisfy numerosity).

Given the sheer volume of claims resulting from the Hurricanes, it is respectfully suggested that numerosity will be established to the satisfaction of the Court. The exact number of claims presented to Markel by members of the putative class will be developed more fully during discovery.

### B.     COMMON QUESTIONS OF LAW AND FACT EXIST

Under Rule 23(a)(2), the Court must find the existence of questions of law or fact that are common to all class members before the matter may be certified as a class action. No qualitative or quantitative test will determine commonality; it is only necessary to find at least one issue common to all class members. ***Brown v. SCI Funeral Services of Louisiana, Inc.***, 212 F.R.D. 602, 604 (S.D. Fla. 2003)

The threshold of commonality is not high. ***Campos v. Immigration and Naturalization Serv.***, 188 F.R.D. 656, 659 (S.D. Fla. 1999) Common questions need only pertain to a substantial number of class members. See ***Kingston Square Tenants Ass'n. v. Tuskegee Gardens, Ltd.***, No. 916029, 1994 WL 808074, at 5 (S.D. Fla. 1994) (citation omitted). "A sufficient nexus is established if the claim or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory." *Fuller,* 197 F.R.D. at 700 (quoting ***Kornberg v. Carnival Cruise Lines, Inc.***, 741 F.2d 1332, 1337 (11th Cir.1984)).

Here, the Plaintiff presents numerous common questions of law and fact, including the following: (a) whether Markel breached its contracts with Plaintiff and the putative Class members; (b) whether Markel breached its contract by failing to pay GCOP to its insureds whose Markel estimates identified three of more building trades;  (c) whether Markel breached its contract by systematically excluding an amount for sales taxes to be paid on material costs found on Markel's estimates of damages; (d) whether Defendant's conduct as alleged herein is continuing and ongoing; (e) the appropriate class-wide measures of damages.

The commonality requirement is satisfied where the plaintiff and the class' claims arise from a common background or present a question of common and general interest to the entire class. *See, e.g., Alfred v. Okeelanta Corp.*, 1991 WL 177658, at 11 (S.D. Fla. April 16, 1991). As

courts have held, breach of contract claims may be certified by showing that the contracts were breached through "the same *course of conduct* by defendant." *Zeno v. Ford Motor Co., Inc.*, 238 F.R.D. 173, 187 (W.D. Pa. 2006); *Bayshore Ford Truck Sales, Inc. v. Ford Motor Co.*, No. 99cv741, 2006 WL 3371690, at 12 (D.N.J. Nov. 17, 2006) (certifying breach of contract claim where "the claims of the class representatives and the class members arise from the same alleged course of conduct by the defendant.").

Plaintiffs allege that by the use of Markel's loss-estimating software and standardized estimating procedures, Markel has (1) established a policy of systemically excluding general contractor's overhead and profit from it loss estimates and resulting offers of settlement when, as established by the estimates created of Markel Adjusters, general contractors overhead and profit should have been paid; (2) established a uniform policy that excluding an amount for sales taxes to be paid on material costs found on Markel's estimates of damages; and (3) established a uniform policy of failing to inform its insureds that they were being underpaid. Thus the defendants have breached Plaintiffs' and the Class members' contracts through the same course of conduct and the commonality element is satisfied here.

### C. TYPICALITY

The critical consideration is whether the plaintiff's claims are the same or similar to the claims of the other members of the Class, or whether they allege a common course of conduct by defendant towards members of the Class. *See Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001); **Fabricant v. Sears Roebuck**, 202 F.R.D. 310, 313 (S.D. Fla. 2001); **Ehlert v. Singer**, 185 F.R.D. 674 (M.D. Fla. 1999) at 689. In other words, the typicality requirement is satisfied if the claims of the named plaintiff have the same essential characteristics as the class at large. *See* **Appleyard v. Wallace**, 754 F.2d 955, 958 (11th Cir. 1985). According to the United States

Supreme Court, the "commonality and typicality requirements of [the rule] tend to merge." ***General Tel. Co. of the Southwest v. Falcon***, 457 U.S. 147, 157 n.13 (1982).

Plaintiff's claims are typical of the claims of other Class members because Plaintiff owns property located within the State of Louisiana that sustained property damage resulting from the Hurricanes that struck Louisiana in 2005 and because its insurer, Markel, tendered and/or paid over an amount of money for repair or replacement of Plaintiff's insured property calculated pursuant to Markel's uniform policies and procedures that under paid it's insureds as set forth above.

In addition, the claims of the Class are based on the same legal theories. Plaintiff has pled facts establishing that the basis for the claims of all Class members is derived from the same course of conduct by Markel: the use of software and uniform policies and procedures that systematically underestimated the cost to repair or replace damaged or destroyed property and thus systematically underpaid Markel insureds. The claim of each Class member is not dependent on varying representations made in individual conversations between Class members and various agents of the Defendant. Here, the essence of the claim is that each Class member's claim under their policy was processed in a uniform manner and was mathematically miscalculated and underpaid in exactly the same way.

The only difference between class members will be the amount of their damages, which is insufficient to defeat certification. Hence, Plaintiff clearly satisfies the typicality requirement.

**D.     ADEQUACY OF REPRESENTATION**

Plaintiff is an adequate class representatives because; (1) his claims arise from the same factual background as the class's claims, (2) he seeks the same exact relief that is sought on behalf of the class, and (3) he is cognizant of and determined to faithfully discharge his duties to

the absent class members. As the class representative, Plaintiff will protect and advance the interests of Class members, and Plaintiff's interests are not antagonistic to those of the Class.

The plaintiff is actively participating in this litigation and he understand his role in this matter. The Plaintiff also understands that he is the class representative and must represent everyone in the Class that was underpaid by Markel and who falls within the definitions of the Class and its Subclasses. Plaintiff is fully committed to see this litigation through and willing takes on the responsibility of seeking full payment for *all* class members, not just himself.

As will be shown at the Class Certification Hearing, Plaintiff's class counsel are experienced in class litigation and have represented plaintiffs in numerous class actions. It is also clear that Plaintiff's class counsel is fully competent and adequately prepared to prosecute this action. Thus, the adequacy of representation requirement is met.

### IX.     PLAINTIFF SATISFIES RULE 23(B)(3)

#### A.  COMMON QUESTIONS OF LAW AND FACT PREDOMINATE OVER INDIVIDUAL ISSUES

As to the "predominance" element under Rule 23(b)(3), "courts generally focus on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Brown,* 212 F.R.D. at 606. "Where . . . common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain." ***Avery v. Uniroyal Technology Corp.***, 2005 WL 1205607, at 5 (M.D. Fla. May 20, 2005) (Whittemore, J.) (quoting ***Smilow v. Southwestern Bell Mobile Systems, Inc.***, 323 F.3d 32, 40 (1st Cir. 2003)). "Not all questions of law or fact need be in common," and "[t]he existence of a few individual questions will not negate the predominance of common issues." ***Brown v. SCI Funeral Services of Florida, Inc.***, 212 F.R.D. 602, 606 (S.D. Fla. 2003).

Given these guidelines, courts have held that in cases where, as here, a defendant insurance company uses a uniform policies and procedures computer software program which is applied to class members in the same or similar manner, class certification is appropriate, even though individual damages may differ among class members. *E.g.* **Brooks v. Educators Mut. Life Ins. Co.**, 206 F.R.D. 96 (E.D. Pa. 2002). In **Brooks**, the Defendant utilized two computer software programs to determine payment amounts for claims under health insurance policies. *Id.* at 99-100.

Just as in the instant matter, the programs calculated benefits using "mechanical formulae" and did not take into account costs in the patient's geographical area, which plaintiffs alleged breached the insurance policies. *Id.* at 104-5. The defendant argued that plaintiff could not satisfy the "predominance" element of Rule 23 because the determination of what to pay for each claim was "a discretionary decision." *Id.* at 105. The Court soundly rejected this argument, stating that it completely ignored the basis for the plaintiff's claim, which was that this very discretion has been effectively taken away through the use of the defendant's computer software. *Id.* The Court held that the predominance element was satisfied and certified the class. *Id.* at 108.

Each Class member the Plaintiff seeks to represent was entitled to have his/her claim adjusted in an appropriate manner and these Class members were entitled to fair and prompt compensation. The proposed Class in this case consists of policyholders who held property insurance with Defendant and had a property loss adjusted pursuant to the same faulty procedures. The defendant breached its contract with each class member by following a common course of conduct directed at Louisiana policyholders. Each of the Class members will have the same or similar policy language and is entitled to the same type of benefit – prompt and fair compensation by the mathematical computation of the amount of General Contractor

15

overhead and profit and/or the payment to them of an amount for sales taxes applicable to the material costs found within the Markel estimates. This task is simple and likely can be accomplished by electronically recalculating the insureds loss to determine who is owed what. Specifically, the determination of who is a member of the class will *NOT* require a re-inspection of the insured property.

Courts have been readily receptive to certification of class actions for contract claims when those claims arise from form contracts (such as insurance policies in this case) and form a uniform common course of conduct on the part of defendants (such as the uniform conduct of Markel in this case). ***Leszczynski v. Allianz Ins.***, 176 F.R.D. 659, 672 (S.D. Fla. 1997) ("When viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such.") (quoting ***Kleiner v. First National Bank of Atlanta***, 97 F.R.D. 683, 693 (N.D. Ga. 1983)); ***Black Hawk Oil co. v. Exxon Corp.***, 969 P.2d 337 (Okla. 1998) (upholding certification of a class based on claims of breach of contract). See also Dehoyo v. Markel Corporation, 240 F.R.D. 269 (W.D. Tex. 2007); ***Doiron v. Conseco Health Ins. Co.***, 240 F.R.D. 247 (M.D. LA. 2007) ***Gilderman v. State Farm Ins. Co.***, 437 Pa.Super. 217, 649 A.2d 941 (class action against insurance company for automatic withholding of 20% representing contractor's overhead and profit from its advance payment); ***Ghoman v. New Hampshire Ins. Co.***, 159 F.Supp.2d 928 (N.D.Tex.2001) (class action against insurance company in which the court granted plaintiff's motion for partial summary judgment, determining the carrier breached the insurance contract by withholding contractor's overhead and profit and sales tax from plaintiff's ACV award).

Finally, it is well-settled that individualized damages issues do not defeat predominance or bar class certification. Regardless of how much Defendant underpaid Plaintiff and each class member, it is clear that Defendant underpaid all of the putative sub-class members in the exact same way. Courts have held time and again that the mere fact that claims of class members may vary slightly is not an impediment to class certification. *See* **Ehlert v. Singer**, 185 F.R.D. 674 (M.D. Fla. 1999); **Fabricant v. Sears Roebuck**,. 202 F.R.D. 310, 313 (S.D. Fla. 2001); **Van Vranken v. Atlantic Richfield Co.**, 38 F.3d 1200 (Fed. Cir. 1994) (defendant's appeal denied where class was charged excessive import and license fees).

**B.    SUPERIORITY OF CLASS ACTION**

There is no litigation procedure available that is superior to the class action in this matter. In the words of our Supreme Court, "where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device." **Deposit Guaranty Nat. Bank v. Roper**, 445 U.S. 326 (1980).

Common sense and economic reality dictate that a party only has an interest in litigating a claim if the potential for recovery exceeds the expected costs and attorneys' fees. *See* **Fishler v. AmSouth Corp.**, 176 F.R.D. 583, 589 (M.D. Fla. 1997) (Kovachevich, C.J.). Here, class certification is clearly in the best interests of the Class because the expense of litigating each individual action separately would not be feasible or cost effective. *Id.*

As will be shown at the Class certification hearing, the claims of the individual class members are minute when compared to the cost of litigating a "stand alone" suit against the defendant. In many, if not most cases, the respective individual class members damages will not be as much as the amount of court costs would have to be advanced to the Clerk of Court in

17

order to file an individual suit in state court. Without the benefit of class procedure these Defendants will be called upon to answer for underpaying a large percentage of its insureds and can continue to underpay property damage claims with impunity. Class certification is the only realistic procedure available to the class members to seek a just resolution of their grievances and to remedy this unlawful conduct.

Further, management of this litigation through class treatment is far superior to any alternative technique of managing complex litigation. This is particularly true in this case, where the facts and law relative to every single class members' claim are identical. In short, as contemplated by the architects of Rule 23, prosecution of this action as a class action will "achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated." Fed. R. Civ. P. 23(b)(3) *Advisory Committee's Note*, 39 F.R.D. 94, 102-03 (1966); **Phillips Petroleum Co. v. Shutts**, 472 U.S. 797, 809 (1985) (recognizing that "class actions … permit the plaintiffs to pool claims which would be uneconomical to litigate individually" and further noting that "[m]ost of the plaintiffs would have no realistic day in court if a class action were not available").

This case presents a textbook situation for class treatment. If the Plaintiff wins, the class wins. There is no practicable alternative which would furnish meaningful relief to the potential thousands of aggrieved class members in this case. A class action stands as the most efficient and, indeed, the only practicable means by which Plaintiff and the Class can litigate their claims against Defendant and it is respectfully suggested that this matter be certified as a class action.

## X. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Court certify the Class. In the alternative, if the Court determines that Plaintiff has not yet met his burden, Plaintiff requests that the class certification decision be deferred until Plaintiff is allowed an opportunity to gather the relevant discovery and present all relevant class certification evidence to the Court.

> RESPECTFULLY SUBMITTED:
>
> JONES & HILL, LLC
>
> */s/ J. Craig Jones*
> _____
> J. Craig Jones, (Bar Roll No. 17648)
> Craig R. Hill, (Bar Roll No. 23780)
> Jones & Hill, LLC
> 131 Highway 165 South
> Oakdale, LA 71463
> Telephone: (318) 335-1333
> Facsimile: (318) 335-1934
> craig@joneshilllaw.com